S03A0135. JENNINGS v. McINTOSH COUNTY BOARD OF
COMMISSIONERS et al.
(583 SE2d 839)

HINES, Justice.

Teresa Jennings filed a petition for writ of mandamus against McIntosh County and its Board of Commissioners ("Board"), seeking, inter alia, the payment of compensation pursuant to OCGA § 15-10-23 (a) (5) for her position as a magistrate, a return to her duties as Clerk of the Magistrate Court of McIntosh County, and reimbursement for attorney fees and other costs incurred in bringing the petition. The Superior Court of McIntosh County granted Jennings's prayer for relief for compensation for 2002, but denied her compensation claimed prior to January 1, 2002, as well as her request to be restored to her position as clerk; the court granted only a portion of Jennings's request for attorney fees, reasoning that Jennings was "only partially successful in her claim." Jennings appeals the denied mandamus relief and the amount of attorney fees awarded. For the reasons which follow, we affirm the superior court's judgment on mandamus with regard to compensation and reinstatement, but we reverse the award of attorney fees.

Jennings asserts the following in support of her petition for mandamus: In August 1989, Jennings was appointed by the Chief Magistrate of McIntosh County to serve as a magistrate; her most recent reappointment as a magistrate was in 2001. Simultaneously with her appointment as a magistrate, Jennings was also appointed by the Chief Magistrate to serve as Clerk of the Magistrate Court of McIntosh County. Prior to 1996, magistrates were paid a flat monthly fee. Effective in January 1996, pursuant to OCGA § 15-10-23, magistrates were to be paid an hourly rate not to exceed 90 percent of the chief magistrate's base pay, but never less than a statutory minimum per month. Under OCGA § 15-10-105 (d), magistrates who also performed the duties of clerk of the magistrate court were to receive a stipend in addition to their pay as magistrates. Jennings believed that she was not being paid according to the statutory guidelines,

and approached the county attorney with her complaint.

In January 2002, the Chief Magistrate began certifying the monthly hours that Jennings worked as a magistrate. Included in the certification were hours that Jennings was "on call."[1]

By letter dated February 4, 2002, Jennings, through her attorney, sent the Board "ante litem notice and official demand" that she receive her pay as mandated by state law; she demanded "approximately $82,994.50" in back pay "since at least 1996." On February 12, 2002, the Board met and adopted a resolution placing the position of Clerk of the Magistrate Court under the supervision of the Clerk of the Superior Court.[2] By letter dated March 11, 2002, Jennings's attorney sent the Board an "amended notice in anticipation of litigation," stating that Jennings would be seeking only the amount of back pay owed for 2001, which was alleged to be $3,174.06.

In a letter to the Board dated March 14, 2002, Jennings requested funds to hire outside counsel to represent her, alleging that the county attorney had a conflict of interest in simultaneously representing her and the Board. Also, on that day the Chief Magistrate issued a directive that Jennings was to continue to report to his office on two days of the week to maintain the pre-existing cases that the Clerk of the Superior Court would "not be taking on." Jennings continued to report to the Chief Magistrate. In a letter dated March 18, 2002, the Clerk of the Superior Court notified the Chief Magistrate that Jennings had not reported to the office to assume the position of deputy clerk and by such actions the Clerk had to assume that Jennings would not be working as deputy clerk.

Jennings filed her petition for writ of mandamus, and following a hearing, the superior court granted Jennings's requested relief regarding her compensation as a magistrate for 2002, and awarded her $2,500 in attorney fees.

1. Jennings contends that the superior court erred in ruling that there was insufficient evidence upon which to award her back pay for 2001; she urges that she offered evidence of every hour worked for that year and that the only question was the rate at which those hours should have been compensated. However, " '[t]he extraordinary writ of mandamus will not lie unless the petitioner seeking it has a clear legal right to have the act performed. *Lansford v. Cook*,

---

[1] At the hearing on the mandamus, Jennings testified that she considered her "on call" hours to include those when she was not physically in the office but available to work if needed; she gave as an example her time shopping at the grocery store where people often approached her with questions regarding the magistrate court; Jennings wore a pager while "on call," stayed within 30 minutes of travel time from the magistrate court, and restricted certain of her personal activities such as attendance at movies.

[2] It appears that in McIntosh County, the Clerk of the Superior Court is also the Clerk of the State and Juvenile Courts.

252 Ga. 414, 415 (314 SE2d 103) (1984). "The law must not only authorize the act be done, but must require its performance." Id.' *Cleveland v. Skandalakis*, 268 Ga. 133, 134 (485 SE2d 777) (1997)." *Gwinnett County v. Blaney*, 275 Ga. 696, 705 (3) (572 SE2d 553) (2002). OCGA § 15-10-23 (c), as it existed in 2001, required that magistrates, other than the chief magistrate, if serving in a full-time capacity, receive the lesser of a minimum monthly salary of $2,812 per month or 90 percent of the monthly salary of the chief magistrate. All other magistrates were to receive a minimum monthly salary of the lesser of $16.22 per hour or 90 percent of the monthly salary of the chief magistrate; provided, however, that no magistrate who served in less than a full-time capacity was to receive a minimum monthly salary of less than $432.64. Many of the time records cited by Jennings not only fail to indicate whether she was working in a full-time or part-time capacity, but make no clear distinction between hours actually worked as a magistrate and those in which she may have been merely "on call."[3] See footnote 2. Thus, the record supports the superior court's conclusion that the evidence presented regarding Jennings's hours worked prior to January 2002 was "inconclusive."[4] Accordingly, it was not error for the superior court to refuse to grant mandamus relief regarding Jennings's claim for compensation prior to January 1, 2002.

2. Jennings next complains that the superior court erred in ruling that the Board was not obligated to pay her for hours certified by the Chief Magistrate if the Board found the certification "unreasonable or out of the ordinary"; she urges that by so ruling, the superior court allowed the Board "to abrogate and usurp the authority of a duly elected judge," i.e., the Chief Magistrate. But under the circumstances of this case the complaint is unavailing.

Effective January 1, 2002, OCGA § 15-10-23 (a) (5) was amended to provide:

> All magistrates other than chief magistrates who serve in less than a full-time capacity or on call shall receive a minimum monthly salary of the lesser of $17.84 per hour for each hour worked as certified by the chief magistrate to the county governing authority or 90 percent of the monthly salary that a full-time magistrate would receive according to paragraph (2) of this subsection; provided, however, that

---

[3] OCGA § 15-10-23 (c), as it existed in 2001, did not provide for any "on call" status.

[4] Jennings also suggests that her entitlement to more compensation for 2001 is demonstrated by the county's implicit acceptance of her hours as reported, because it paid her for those hours, albeit at the wrong rate. However, this does not cure the lack of clarity of the submitted time records in regard to then-OCGA § 15-10-23 (c).

notwithstanding any other provisions of this subsection, no magistrate who serves in less than a full-time capacity shall receive a minimum monthly salary of less than $475.90.[5]

Thus, an initial step in obtaining compensation under the statute is a certification by the chief magistrate to the county governing authority of the hours worked by the less than full-time magistrates.

Citing *Boswell v. Bramlett*, 274 Ga. 50 (549 SE2d 100) (2001), Jennings argues that while a local governing authority has the power to set the budget for a particular office, including that of magistrate court, once that budget has been established the local governing authority cannot dictate how it is spent. However, in *Griffies v. Coweta County*, 272 Ga. 506 (530 SE2d 718) (2000), this Court made plain that even though the elected official has the discretion to expend money designated in the budget, the expenditure must be " 'within the sphere of [the officer's] legally delegated powers.' " Id. at 509 (1); *Gwinnett County v. Blaney*, supra at 705 (3). The Chief Magistrate had the statutory duty to certify the hours that Jennings worked as a magistrate, and had that occurred in a lawful manner that would be the end of the inquiry. But the evidence was that the Chief Magistrate attempted to certify hours for Jennings which she did not work as a magistrate.[6] In so doing, the Chief Magistrate acted outside the sphere of his legally-delegated authority, and there was no certification as provided by statute. Thus, it was not error for the superior court to find that the Board was not obligated to pay Jennings for hours for which the certification was suspect.

3. Jennings likewise fails in her contention that the superior court erred in ruling that the Board did not have to pay for any hours served "on call" even if those hours are certified by the Chief Magistrate, thereby allowing the Board to abrogate and usurp the authority of a duly-elected judge.

Jennings argues that it was error for the superior court to rule that the Chief Magistrate may not include "on-call" hours in his certification because OCGA § 15-10-23 does not explicitly nor implicitly prohibit the certification of "on-call" hours. However, when the language of a statute is plain and unambiguous, judicial construction is forbidden. *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d

---

[5] Effective January 1, 2003, the hourly rate was increased to $19.69 and the monthly minimum increased to $525.08.

[6] The Chief Magistrate testified in regard to his certification: "Well, there was two different — one of them was certified because of the hours that [Jennings] worked, supposedly I was in the hospital most of the time, but I would take her word for it. And there was another one that I certified to make y'all call me, let me know what was going on" . . . "I said I certified some hours on call hours and other hours because nobody would tell me what was going on and I wanted you to call me and you did."

880) (2003).

OCGA § 15-10-23 (a) (5) provides that the Chief Magistrate is to certify "each hour worked" as a magistrate; it does not provide for certification of hours that the individual is merely available for work. The phrase "on call" in the statute is used to describe a status of employment, that is, being employed on an as needed basis. By her own testimony, Jennings considered herself to be "on call" when she was available to work, including time spent grocery shopping and while she was engaged in other personal activities and errands. Therefore, such hours were not subject to certification by the Chief Magistrate.

Jennings further argues that a prohibition of certifying "on-call" hours violates the holding in *Boswell v. Bramlett*, supra, that a constitutionally elected officer may spend the funds budgeted for that officer on whatever the officer deems appropriate. However, such argument completely ignores the fact that the expenditure must be within the exercise of legally delegated power. See Division 2, supra. The certification of hours not "worked" as a magistrate was outside the ambit of the Chief Magistrate's statutory mandate.

4. Jennings contends that the superior court erred in ruling that it did not have the authority to restore her to her position of Clerk of the Magistrate Court because the Board demoted her from that position without abiding by the procedures of the county personnel policy or otherwise providing for procedural due process.

What the superior court expressly ruled was that it lacked the authority to supercede the "lawful acts" of the Board and the Clerk of the Superior Court as provided in OCGA § 15-10-105 (b), and in the McIntosh County Personnel Policy. And there is simply no evidence of record that either the Board's decision to provide that the Clerk of the Superior Court would also serve as Clerk of the Magistrate Court or that the Clerk of the Superior Court's actions in implementing the Board's decision were violative of OCGA § 15-10-105, or were in any other manner unlawful.

As to the alleged violation of the "Personnel Policy for McIntosh County, Georgia," such policy defines an "adverse action" taken against an employee as one that "results in a suspension without pay, salary reduction, demotion, or dismissal." The superior court found that in transferring Jennings's clerk duties "no adverse action was taken against Ms. Jennings," and the record supports this finding; there is no evidence of a suspension, either with or without pay, reduction in salary or benefits, demotion, or dismissal of Jennings. The fact that Jennings would be working as a deputy clerk under the auspices of the Clerk of the Superior Court is not, in and of itself, evidence of a demotion, and Jennings simply did not provide any evidence that working under the auspices of a higher court rather than

functioning more autonomously as the clerk in the magistrate court was a lessening in her status or responsibility.

Jennings also complains that because she was obedient to a directive by her immediate supervisor, she was stripped of her duly appointed status as Clerk of the Magistrate Court. However, even if Jennings chose to comply without question with the Chief Magistrate's instruction that she continue to report to him for a portion of the week regarding her clerk duties, nothing prevented her from also checking with the superior court regarding her clerking duties there.

Under the evidence of record, the superior court did not err in refusing to restore Jennings to her position as Clerk of the Magistrate Court.

5. Lastly, Jennings complains that the superior court erred in awarding her less than one-fifth of her requested attorney fees when she was successful in the central issue of her claim, and when the Board acted in bad faith, was stubbornly litigious, and caused her unnecessary trouble and expense by wilfully refusing to pay her in accordance with state law.

It is certain that,

> when an official, acting in his or her official capacity, is required to hire outside counsel to assert a legal position that the local government attorney cannot because of a conflict in representing the local government or will not assert, and the official is successful in asserting his or her position, the local government must pay the official's attorney fees.

*Gwinnett County v. Blaney*, supra at 706 (4); see also *Boswell v. Bramlett*, supra at 52 (3); *Gwinnett County v. Yates*, 265 Ga. 504, 508 (2) (458 SE2d 791) (1995). Even though, as the superior court noted, Jennings was not successful in obtaining all of her requested relief, she prevailed on the principal claim in her petition for writ of mandamus, which was that her compensation should be in accord with that mandated by statute. *Boswell v. Bramlett*, supra at 52 (3); *Gwinnett County v. Yates*, supra at 508 (2). Thus, Jennings is entitled to the full amount of reasonable attorney fees,[7] and the superior court erred in finding otherwise.[8]

---

[7] In its order, the superior court did not rule that Jennings's fees as submitted were unreasonable; the only basis given for the partial award was that Jennings did not prevail in all of her claims. Nor did the superior court order address Jennings's contention that the Board acted in bad faith, was stubbornly litigious, and caused her unnecessary trouble and expense. Consequently, such contention is not addressed in this appeal.

[8] Jennings is incorrect in her assertion in argument that her award of costs should include her attorney fees in bringing this appeal. See *David G. Brown, P.E. v. Kent*, 274 Ga. 849 (561 SE2d 89) (2002).

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, J., who concurs in Divisions 1, 2, 3, and 5, and in the judgment.*

DECIDED JUNE 30, 2003 —
RECONSIDERATION DENIED JULY 29, 2003.

*Bentley, Bentley & Bentley, Sam P. Hensley, Jr.*, for appellant.
*Adam S. Poppell III, James R. Coppage*, for appellees.